## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **JERRY DUNCAN, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **No. 3:10-cv-217** |
| | ) | **Judge Aleta A. Trauger** |
| **TENNESSEE VALLEY AUTHORITY** | ) | **Magistrate Judge Brown** |
| **RETIREMENT SYSTEM and** | ) | |
| **TENNESSEE VALLEY AUTHORITY,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM

Pending before the court are two overlapping motions: 1) a Motion for Summary Judgment filed by defendant Tennessee Valley Authority ("TVA") (Docket No. 121), to which defendant Tennessee Valley Authority Retirement System ("TVARS") has filed a Response (Docket No. 217), the plaintiffs have filed a Response in opposition (Docket No. 224), and TVA has filed a Reply (Docket No. 227); and 2) a Partial Motion for Summary Judgment filed by the plaintiffs (Docket No. 211), to which TVARS has filed a Response (Docket No. 217), TVA has filed a Response in opposition (Docket No. 220), and the plaintiffs have filed a Reply (Docket No. 231). For the reasons discussed herein, TVA's Motion for Summary Judgment will be granted and the action will be dismissed with prejudice. The plaintiffs' Partial Motion for Summary Judgment will be denied as moot.

## BACKGROUND

TVA was created by Congress in the 1930's, at President Roosevelt's request, to manage electric power production, navigation, and flood control in the Tennessee River region. It was initially funded by Congress and over time eventually became a self-supporting enterprise.

1

In 1939, TVA created TVARS to provide retirement income to TVA employees and their families. TVARS is a legally separate entity from TVA. At the time this action was filed, there were approximately 36,000 current and former TVA employees served by TVARS.

TVARS is governed by the Rules and Regulations of the TVA Retirement System (the "Rules").[1] Rule 3.1[2] states that the Board of Directors of TVARS (the "Board") "shall have the control over and the responsibility for the general administration of the system in accordance with the Trust Agreement[3] and [the Rules] insofar as are involved matters related to the computation of necessary contributions by TVA and the members,[4] the allowance of benefits, and the rights generally of the beneficiaries of the System."[5] Rule 3.2 states that the Board "shall consist of seven members, three of whom shall be elected by and from the membership of the

---

[1] The current version of the Rules is found in the record at Docket No. 47, Ex. 1.

[2] The Rules are divided into sections numbered 1-19, and many of these sections are further subdivided into subsections with corresponding letters or numbers. For ease of reference, this opinion will refer to specific provisions in the Rules as "Rule" followed by a section number and, where appropriate, subsection letters or numbers separated by a period. Rule 3.1, for example, refers to provision 1 in section 3 of the Rules.

[3] The Trust Agreement is not defined in the Rules but appears to refer to the Trust Agreement Between the Board of Directors of The Retirement System of the Tennessee Valley Authority and Mellon Bank, N.A., found in the record at Docket No. 126, Attachment 6 (the "Trust Agreement").

[4] "Members" is defined in the Rules as persons presently employed by TVA who became employed after the establishment of TVARS; membership ceases upon withdrawal of TVARS contributions, retirement, death, one year after the termination of employment for members who were employed by TVA for more than 6 months, or on the day of termination of employment for members who were employed by TVA for less than six months.

[5] "System" is not expressly defined but appears to refer to TVARS itself.

System, three of whom shall be appointed by TVA, and one of whom shall be selected by a majority vote of the other six."

The Rules were amended in 1974, after Congress passed the Employee Retirement Income Security Act ("ERISA"), purportedly to allow the Rules to provide some of the same protections to TVARS beneficiaries as were provided to retirees of private corporations under ERISA. Specifically, the 1974 amendments, which became effective on January 20, 1975, rendered certain of the benefits provided by TVARS vested and nonforfeitable, where, prior to 1974, no retirement benefits were vested.

TVARS is funded primarily by contributions from TVA.[6] TVA's contributions are described in detail in Rule 9.B, which indicates that TVA's annual contributions shall not be less than the amount determined by an actuarial valuation to be necessary to cover the nonforfeitable benefits. Rule 10.D describes the "Excess COLA Account," which is credited with all of TVA's contributions that are over and above the amount necessary to cover the benefits. Rule 9.B.6 indicates that funds from the Excess COLA Account may then be withdrawn, up to a certain amount determined by a formula outlined in Rule 9.B.6, to be credited toward future TVA contributions.

In addition, pursuant to Rules 9A, 19A, and 10B, members may contribute their own money to an Annuity Savings Account and TVARS then provides interest on those funds. The interest rate is not definitively set by the Rules, but Rule 4.5 states: "The regular interest rate or

---

[6] When TVARS was initially founded, TVA was given financing from Congress that was appropriated for the funding of TVARS. TVA no longer receives these Congressional appropriations and funds TVARS with earnings from its own business activities.

rates to be used in all actuarial and other calculations shall be determined from time to time by resolution of the [B]oard."

Rule 11.B.1 states: "Rights to benefits based on a member's own contributions shall be nonforfeitable at all times. A nonforfeitable right to accrued benefits from creditable service based on TVA's contributions shall arise on the retirement of a member; on a member's death in service; on completion by a member who was an employee on June 8, 1987 or thereafter, of five years of such creditable service; on attainment of the age of 60 by an individual who first became a member of the System prior to April 1, 1991, or on completion by a member whose employment ended prior to June 8, 1997, of ten years of such creditable service . . .".

Rule 13 states that the Rules "may be amended by the [B]oard from time to time, provided that the [B]oard gives at least 30 days' notice of the proposed amendment to TVA and to the members, and further provided that TVA may, by notice in writing addressed to the [B]oard within said 30 days, veto any such proposed amendment, in which event it shall not become effective. No amendment to [the Rules] shall be adopted which will reduce the then accrued benefits of the existing members or beneficiaries which are nonforfeitable or covered by accumulated reserves held therefor."

In 2009, TVARS was experiencing financial concerns related to underfunding. In June of 2009, TVARS requested an annual contribution from TVA for 2010 in the amount of $300,000,000. TVA responded by offering a lump-sum $1 billion contribution in exchange for amending the Rules such that TVA would not make any additional contributions for 2010-2013 as well as making other changes that would decrease the payouts to beneficiaries over the coming years from that which was presently anticipated.

On August 17, 2009, the Board voted four to three in favor of TVA's proposal and to amend the Rules accordingly, with the changes to become effective as of January 1, 2010 (the "Amendments"). Subsequent to the vote, the Board provided TVARS members with notice of the Amendments, which became official thirty days later, in the absence of a veto from TVA. No official notice had been provided to members prior to the Board's vote.

The Amendments made three primary changes to the Rules:[7] 1) the "Cost-of-Living Increases" (also referred to as cost-of-living adjustments or "COLAS") for eligible retirees – previously determined by a formula related to the Consumer Price Index ("CPI")[8] – would be capped at zero for 2010, 3% for 2011, zero for 2012, and 2.5% for 2013; 2) the eligibility age for COLAS was raised from 55 to 60;[9] and 3) an entirely new provision was added to the Rules, Rule 9.B, which indicated that any requirements for TVA to make contributions to TVARS would be suspended for the years 2010-2013, in exchange for one lump-sum contribution from

---

[7] For comparison, the version of the Rules that was in effect prior to the Amendments is found in the record at Docket No.126, Attachment 6.

[8] Rule 6 describes the benefits offered by TVARS. Rule 6.I addresses COLAS specifically. Prior to the Amendments, Rule 6.I stated: "The [B]oard shall increase . . . that portion of the monthly benefit payable to each retiree, or beneficiary of a deceased member or retiree, which is derived from TVA's contributions to the System . . . whenever the 12-month average of the Consumer Price Index (CPI) for any year after 1966 exceeds by as much as one percent (1%) the CPI average for the preceding year." It also stated that the rate of increase "shall be the percent increase in the CPI since the last adjustment . . . provided, however, that the increase for any year shall not exceed five percent (5%) except that the [B]oard may, in its discretion and with the approval of TVA, apply for any year a maximum different from that specified above."

[9] Prior to the Amendments, Rule 6 also stated that the COLAS would be payable to beneficiaries starting when the retiree reaches (or would have reached) age 55. The Amendments added language indicating that, for members who retire after January 1, 2010, COLAS will not be provided until they reach (or would have reached) age 60.

TVA in 2010 in the amount of $1 billion.[10]  In addition, as part of the negotiations surrounding

the Amendments, the Board changed the interest rate credited on members' savings (in the

Annuity Savings Account) from 7.5% to 6% in future years.[11]  Following the Amendments, the

Board used funds in the Excess COLA account to pay the COLA costs for 2009 through 2013.

## PLAINTIFFS' ALLEGATIONS THAT THE BOARD VIOLATED THE RULES[12]

---

[10] Rule 9.B states: "In consideration of a contribution by TVA to the Retirement System of $1 billion for fiscal year 2010, the requirements regarding TVA's contributions to the Retirement System set forth above in Rule 9B and related actuarial valuations shall be suspended for a four-year period from fiscal year 2010 through fiscal year 2013.  Notwithstanding section 10, this $1 billion contribution by TVA to the Retirement System shall be credited to the Accumulation Account as set forth in section 10C1 but shall not be credited to the Excess COLA Account as set forth in 10D1."

[11] The change to the interest rate on the member's annuities (which are contributions the members themselves put into TVARS to supplement their own pensions) is not reflected in the Rules themselves.  At the time of the Amendments, the interest rate had been set at 7.25% , and as part of the negotiations surrounding the Amendments, the Board agreed to lower that rate to 6%, effective January 1, 2010.

[12] The plaintiffs raise arguments based on disputed interpretations of the plain language of the Rules as well as disputed facts regarding extrinsic evidence.  This section recounts the primary thrust of the plaintiffs' argument that the Board's actions violated the express language of the Rules, but it does not provide a complete overview of the factual disputes at issue or the defendants' responses, nor does it attempt to make any final conclusions as to whether the Rules were violated as a matter of law.  For the reasons discussed below, the court need not reach these questions.  The court also notes that TVARS submitted briefing outlining its own interpretation of the Rules and its position as to whether the Rules were violated in each of the ways the plaintiffs allege. TVARS' briefing also argues that the court should defer to TVARS' position on these questions.  Because the court never reaches the substantive question of how to interpret the Rules or whether they were violated, the court does not in this opinion recount TVARS' position. But the court notes, that even if these issues were reached, while TVARS' briefing would be taken into consideration, it would not be dispositive.  While the Rules indicate that the Board is responsible for interpreting the Rules and that deference should be given to their interpretation, the court understands this to refer to the Board's decisions in the course of administering the retirement system but not to the Board's position taken in the course of litigation.

The plaintiffs argue that the Board's actions have violated the Rules, and this argument is the foundation for most of the claims at issue in this case. First, the plaintiffs argue that the procedural steps taken by the Board in enacting the Amendments violated the notice provisions in Rule 13 by not providing notice to members 30 days before the Board *voted* on the Amendments on August 17, 2009. The plaintiffs claim that the plain language of the provision, specifically the reference to giving notice to a "proposed amendment," unambiguously indicates that notice should be provided before the vote. Further, the plaintiffs assert that only by receiving notice prior to the vote could the members have taken any steps to influence the outcome (such as lobbying their elected representatives), but that, once the vote had taken place, such attempts would become futile. The plaintiffs also argue that this reading is consistent with the interpretation given by the Sixth Circuit and other courts to similar notice provisions in the Administrative Procedures Act ("APA"), which differentiate between a proposed rule and a definite rule. The plaintiffs concede that, historically, notice of changes to the Rules has always been given to members *after* the Board voted on the changes, including when the Rules were amended in 1974 to establish the benefits that the plaintiffs now claim were reduced or eliminated by the Amendments. The plaintiffs argue, however, that this historical practice should not preclude a finding that the Rules truly require pre-vote notice, nor would such a finding necessitate the invalidation on procedural grounds of earlier amendments, such as the 1974 amendments, as those amendments have gone unchallenged for so long.

Second, the plaintiffs argue that the substantive changes made by the Board to the retirement plan benefits violated the Rules. The plaintiffs allege that changes to the caps and to the eligibility age for COLAS violated the express language of Rule 13, which prohibits amendments to the Rules that reduce benefits "which are nonforfeitable or covered by

7

accumulated reserves held therefor" because 1) the COLAS were vested under Rule 11.B.1, and 2) the anticipated COLAS for 2010-2013 were covered by funds in the Excess COLA Account. While Rule 6.I expressly allows the Board, with TVA's approval, to change the maximum rate for COLAS to something other than the 5% default cap, the plaintiffs cite the language in the introduction to Rule 6.I, which states that the COLAS *shall* be increased whenever the CPI changes by more than 1%, as support for the proposition that the Rules in fact only allow the Board to raise the cap beyond 5% but not to lower it below the CPI-based rate outlined in the Rules. The plaintiffs also argue that the Board's change to the interest rate on the Annuity Account violated Rule 4.5. While Rule 4.5 expressly allows the Board to change the interest rate, the plaintiffs argue it impliedly allows a change only to the interest rate on *future* contributions but not to the rate on funds already invested. The plaintiffs further argue that the change to the interest rate violates Rule 11.B.1, which renders benefits based on members' own contributions nonforfeitable at all times, claiming that the interest rate on the Annuity Account – which is comprised of member contributions – is accordingly nonforfeitable and therefore cannot be reduced.

Third, the plaintiffs argue that the Amendments violated Rule 9.B by suspending contributions from TVA for the years 2010 through 2013 in exchange for a limited lump sum payment from TVA. While the plaintiffs do not cite a specific clause within Rule 9.B that requires annual payments, they appear to refer to Rule 9.B.5, which refers to calculations for amounts payable by TVA "each year." The plaintiffs also cite extrinsic evidence that, in practice, TVARS has calculated the funding necessary to cover benefits, requested funding, and received funds from TVA on an annual basis.

Finally, the plaintiffs argue that TVARS violated the Rules in withdrawing funds from the Excess COLA Account between 2009 and 2013.[13] The plaintiffs allege that, because Rule 10.D.2 allows funds to be withdrawn from the Excess COLA account only to cover TVA's contributions to TVARS, no money should have been withdrawn during the years when TVA was not officially making any contributions. They further argue that, even if TVA had been making contributions during these years, the amount withdrawn was in excess of the amount allowed under the formula contained in Rule 9.B.6, and that at least a portion of the contributions should have been made directly from TVA rather than from the Excess COLA Account. While the language of Rule 9.B.6 allows funds in the Excess COLA Account to be used toward TVA's contributions to cover *all* benefits, the plaintiffs argue that, in practice, the funds from this account have only ever been used (and were only ever intended to be used) to cover the portion of the TVA contributions which go toward COLA payments. The plaintiffs appear to contend that TVA should have been forced to make contributions during 2010 to 2013 to cover both the costs of the retirement system and the COLAS that were distributed during these years, rather than to drain this money from the Excess COLA Account; and that, if this had been done, the Excess COLA Account would have retained sufficient funding to have issued COLAS at the CPI-based rate for those years, rendering the Amendments financially unnecessary.

## PROCEDURAL HISTORY

---

[13] As TVA points out in its briefing, the plaintiffs did not raise these allegations in the Complaint. TVA argues that this issue is not properly before the court, though the court notes that these allegations ultimately fall within the same causes of action based on the Board's alleged violation of the Rules as the other alleged Rules violations. The court need not reach this issue, however, because – for the reasons discussed below – none of the plaintiffs' claims for violation of the Rules will be reviewed as a matter of law.

On March 5, 2010, the plaintiffs, present and former participants and beneficiaries of TVARS,[14] filed a lawsuit against the individual directors of the TVARS Board at the time of the filing (Leonard J. Muzyn, Leslie P. Bays, Anthony L. Troyani, John M. Hoskins, Phillip P. Reynolds, and Janet C. Herrin) for: 1) breach of fiduciary duty, 2) breach of contract, 3) violation of the plaintiffs' privileges and immunities under the United States Constitution, and 4) violation of the "anti-cutback" provisions of the Internal Revenue Code. (Docket No. 1.)

On April 29, 2010, the plaintiffs filed a First Amended Complaint, which added an equitable relief request for the court to appoint an impartial seventh member to the Board, alleging that the defendants could not agree upon the selection of a seventh member and that this was preventing the Board from making necessary decisions. (Docket No. 14.)

On September 7, 2010, in response to motions by the defendants to dismiss the action and a motion by TVA to intervene, the court issued an Order that 1) dismissed with prejudice the claims for breach of contract, violation of the Internal Revenue Code, and equitable relief; 2) dismissed without prejudice the claims for breach of fiduciary duty and violation of constitutional rights; 3) granted the plaintiffs leave to file an amended complaint within 14 days, directing the plaintiffs that the next complaint should substitute TVARS and TVA as the named defendants; and 4) denying TVA's Motion to Intervene as moot. (Docket No. 44.) In an accompanying Memorandum, the court also indicated that, in filing an amended complaint, the

---

[14] The caption in this case names as plaintiffs Jerry Duncan, Charles T. Evans, David McBride, Ronald E. Farley, Larry J. Simpson, Robert B. Bonds, Steve Hinch, Carl D. Hewitt, III, and all others similarly situated. Two of the named plaintiffs, Jerry Duncan and Carl D. Hewitt, III, were reported to have died during the course of the litigation and have therefore been dismissed as parties to this action, pursuant to TVA's unopposed motion. (Docket No. 208.)

plaintiffs should make "any other changes that are necessary in light of [the court's] Memorandum." (Docket No. 43 (the "Prior Opinion")).

The Prior Opinion contained some discussion as to the characterization of TVARS and the court's review of a challenge to the actions of the Board, in particular noting that TVARS is not a trust that is subject to Tennessee common law but that, instead, the Rules that govern TVARS are to be treated as a federal legislative enactment. Accordingly, the court essentially rebuked the plaintiffs' theory of their fiduciary duty claims, which was drawn from the Tennessee common law of trusts, because these common law duties do not apply. The court noted that the plaintiffs' allegations that the Board breached fiduciary duties to the plaintiffs would be cognizable only to the extent that the plaintiffs could demonstrate that these duties arise from the Rules themselves (or from the Trust Agreement) and give rise to an action under federal law. The court indicated that, in their next pleading, the plaintiffs might reframe the allegations underlying their fiduciary duty claims – particularly those allegations that the Board expressly violated the Rules – as a claim under federal law (such as a claim under the APA, if the plaintiffs can show that it applies) and that the plaintiffs might seek declaratory relief.[15]

On September 21, 2010, the plaintiffs filed the Amended Complaint, which is the current operative complaint in this action (hereinafter, the "Complaint"), asserting claims for 1) violation

---

[15] The Prior Opinion expressed the court's position that, under the standard of review articulated by the APA, a clear violation of the express language of the Rules may exceed the scope of the Board's authority and warrant relief. Therefore, the Prior Opinion indicated that, if the plaintiffs were able to show that the APA applied to their challenge of the Board's violation of the Rules – or that there were another legally cognizable claim under federal law – the plaintiffs may be entitled to declaratory relief rendering the Amendments invalid. As discussed more fully below, the plaintiffs have failed to show that the APA applies to this challenge, and the court finds that it does not.

of the APA, 2) violation of the due process and equal protection clauses of the United States Constitution, 3) violation of the Takings Clause of the United States Constitution, 4) breach of fiduciary and other duties owed by TVARS to TVARS members, 4) violation of the Government in the Sunshine Act, and 5) equitable estoppel; and seeking both declaratory and compensatory relief.

On November 18, 2013, TVA filed a Motion for Summary Judgment (Docket No. 121), along with a Memorandum in support (Docket No. 128), a Statement of Undisputed Material Facts (Docket No. 127), and supporting declarations (Docket Nos. 122-126). On March 6, 2015, with leave of court, the plaintiffs filed a Response in opposition (Docket No. 224), along with a Response to TVA's Statement of Undisputed Material Facts (Docket No. 226), and a supporting declaration (Docket No. 225).

On February 6, 2015, with leave of court, the plaintiffs filed a Partial Motion for Summary Judgment (Docket No. 211), along with a Memorandum in Support (Docket No. 212), a Statement of Undisputed Material Facts (Docket No. 216), and supporting declarations (Docket Nos. 213-215), seeking summary judgment on their fiduciary duty, Takings Clause, and estoppel claims and on their request for declaratory relief and seeking to proceed to trial only as to the calculation of compensatory damages. On March 6, 2015, TVA filed a Response in Opposition (Docket No. 220), along with a Response to the plaintiffs' Statement of Undisputed Material Facts (Docket No. 221).

On March 6, 2015, TVARS filed a Joint Response to both TVA's Motion for Summary Judgment and the plaintiffs' Partial Motion for Summary Judgment (Docket No. 217), along with its own Statement of Additional Relevant Facts (Docket No. 219) and a supporting declaration (Docket No. 218). Also on March 6, 2015, TVARS filed a Response to TVA's

Statement of Undisputed Material Facts (Docket No. 222) and a Response to the plaintiffs' Statement of Undisputed Material Facts (Docket No. 223). On March 20, 2015, TVARS filed a Reply to: 1) the plaintiffs' Response to TVA's Motion for Summary Judgment, and 2) TVA's Response to the plaintiffs' Partial Motion for Summary Judgment. (Docket No. 230.)

On March 20, 2015, TVA filed a Reply in support of its Motion for Summary Judgment (Docket No. 227), along with a Response to TVARS' Statement of Additional Relevant Facts (Docket Nos. 228 and 229).

Also on March 20, 2015, the plaintiffs filed a Reply in support of their Partial Motion for Summary Judgment (Docket No. 231), along with a response to TVARS' Statement of Additional Relevant Facts (Docket No. 233), and a supporting declaration (Docket No. 232).

## SUMMARY JUDGMENT STANDARD

Rule 56 requires the court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To win summary judgment as to the claim of an adverse party, a moving defendant must show that there is no genuine issue of material fact as to at least one essential element of the plaintiff's claim. Once the moving defendant makes its initial showing, the burden shifts to the plaintiff to provide evidence beyond the pleadings, "set[ting] forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Conversely, to win summary judgment as to its own claims, a moving plaintiff must demonstrate that no genuine issue of material fact exists as to all essential elements of her claims. "In evaluating the evidence, the court must draw all inferences in the light most

favorable to the non-moving party." *Moldowan*, 578 F.3d at 374 (*citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

At this stage, "'the judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'" Id. (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). But "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient," and the party's proof must be more than "merely colorable." *Anderson*, 477 U.S. at 252. An issue of fact is "genuine" only if a reasonable jury could find for the non-moving party. *Moldowan*, 578 F.3d at 374 (*citing Anderson*, 477 U.S. at 252).

## ANALYSIS[16]

In their briefing, the plaintiffs have abandoned their claims under the due process and equal protection clauses of the United States Constitution, and the Government in the Sunshine Act. The remaining claims are discussed below.

## I.     A Private Right of Action to Enforce the Rules

There has been a great deal of discussion as to what cause of action actually entitles the plaintiffs to pursue their challenge to the Board's actions in federal court and what standard of review the court should apply. Both in prior rounds of briefing addressing the dismissal of the plaintiffs' First Amended Complaint and in the currently pending briefing regarding the claims raised in the Complaint, the parties have focused much of their efforts on identifying the appropriate causes of action, if any, to form the basis for the plaintiffs' action. The court recognizes that this is due, in part, to a lack of guiding precedent. There is not a significant

---

[16] Since the two Motions for Summary Judgment overlap in substance, the court considers the briefing on both motions simultaneously.

history of litigation of this nature against TVA or TVARS.  Thus, in reviewing this action, the

court is also faced with the challenge of framing this case by relying on only the limited

instruction the court can derive from the Sixth Circuit decisions in *Beaman v. Retirement System*

*of the Tennessee Valley Authority*, 928 F.2d 1132 (6th Cir. 1991) and *Tennessee Valley Authority*

*v. Kinzer*, 142 F.2d 833 (6th Cir. 1944).

Count One of the Complaint is styled as a claim for declaratory judgment.  Declaratory

judgment, however, is not a cause of action, but a specific type of relief.  In order for the

plaintiffs to be entitled to declaratory judgment, they must first succeed on a cognizable cause of

action.[17]  As the court reads the Complaint, the Plaintiffs' request for declaratory judgment is

primarily premised on a claim challenging the Board's actions for violating the Rules.  In other

words, the Plaintiffs attempt to assert a private right of action to enforce the Rules, with

declaratory judgment as one of the desired results.[18]

As noted in the Prior Opinion, the Sixth Circuit's holding in *Kinzer* is clear that the Rules

are given the force of a legislative enactment and that, therefore, no common law claim may be

applied to their enforcement.  142 F.2d at 837 ("[T]he Tennessee Valley Authority, as a

---

[17] The plaintiffs may have been misled by the Prior Opinion, which indicated that the court could
grant declaratory relief rendering the Board's actions invalid if the plaintiffs were able to show
that the Rules had been violated.  Implicit in the court's statement that declaratory relief may be
available, however, is the necessary step of first demonstrating a viable cause of action.  The
court cannot make the leap from finding that the Board violated the Rules to issuing declaratory
relief invalidating the Board's actions without first establishing legal grounds for the court's
review.  Indeed, the Prior Opinion explicitly noted that the plaintiffs should reframe their
challenge to the Board's actions using the vehicle of a proper cause of action such as an action
under the APA, if it were to apply.

[18] Count One of the Complaint – seeking declaratory judgment – also references other causes of
action besides a private right of action to enforce the Rules.  Those claims will be reviewed in
the subsequent sections.

governmental instrumentality, is free from a state's regulation or control and subject to suit only as permitted by the federal statute creating it."). The *Beaman* opinion, citing to *Kinzer*, in turn strongly suggests that a challenge to the actions of the Board is most properly framed either as a claim under the APA – while declining to decide whether the APA applies to TVARS – or as a direct action to enforce the Rules, which *Beaman* held would warrant the same standard of review under federal common law. *Beaman*, 982 F.2d 1132. Just as it does not confirm that the APA applies, the *Beaman* opinion does not confirm that a private cause of action may be brought to review a Board decision, and it appears that there is no precedent for doing so. *See id.* In suggesting that a private right of action may be available, the *Beaman* opinion appears to rest on an outdated interpretation of the federal common law to allow for the judicial creation of a private cause of action wherever a statutory right has been violated.[19]

Ten years after *Beaman* was decided, however, the Supreme Court issued a seminal opinion that effectively overturned any federal common law basis for creating private rights of action to enforce federal legislation.[20] *Alexander v. Sandoval*, 532 U.S. 275 (2001) (holding that

---

[19] For example, the *Beaman* opinion notes that TVARS is most closely analogous to the Civil Service Retirement Act ("CSRA"). In 1936, the Supreme Court held that, absent an express preclusion against a private right of action in the statute forming the CSRA, the Court would not deem the statute to preclude a private right of action to enforce the rights created by the statute, although the action would be subject to the same arbitrary and capricious standard of review for agency determinations as *Beaman* held applies to challenges involving TVARS. See *Dismuke v. U.S.*, 197 U.S. 167, 171-74 (1936). Later, federal legislation was enacted to address the agency and judicial review of CSRA administrative determinations. *See infra*, note 24.

[20] The court notes that the parties did not brief this issue. Rather than arguing that the plaintiffs could not seek judicial review of their challenge to the Board's alleged violation of the Rules because the Rules do not create a private right of action, TVA merely argued that the court should review the plaintiffs' challenge under the arbitrary and capricious standard for legislative activity and find in favor of TVA on summary judgment because there was a rational basis for the Board's decisions. It may be the case that the arguments in the briefing were structured this

16

absent evidence of Congressional intent to create a private right of action to enforce federal legislation, a private right of action shall not be judicially created to enforce a federal statute); *see also Armstrong v. Exceptional Child Ctr., Inc.*, 135 S.Ct. 1378, 1387-88 (2015) ("Our precedents establish that a private right of action under federal law is not created by mere implication, but must be 'unambiguously conferred.'" (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002)); *Astra USA, Inc. v. Santa Clara Cnty. Cal.*, 131 S.Ct 1342, 1345 (2011) (holding that, where there is no private right of action to enforce a statute, all claims to enforce the statute must be treated the same "'[n]o matter the clothing in which [the plaintiffs] dress their claims'") (quoting *Tenet v. Doe*, 544 U.S. 1, 8 (2005)); *Sosa v. Alvarez-Machain*, 542 U.S. 692, 727 (2004) ("The creation of a private right of action raises issues beyond the mere consideration whether the underlying primary conduct should be allowed or not, entailing, for example, a decision to permit enforcement without the check imposed by prosecutorial discretion.").

The Rules, which are given the force of a legislative enactment, contain no private right of action for their enforcement, nor have the parties pointed to – or is the court aware of – any other legislation that permits a private right of action to enforce the Rules. Accordingly, the court cannot entertain a private cause of action challenging the Board's actions on the basis that they violate the Rules, whether seeking declaratory or other relief.

## II.   The Administrative Procedures Act Claims

---

way because TVA, like the plaintiffs, was misled by the Prior Opinion and its citation to *Beaman* and concluded that a private right of action could be created under federal common law. It may also be the case that TVA did not address a private right of action because the plaintiffs did not expressly label their claim anywhere in the Complaint or in their briefing as one for a private right of action to enforce the Rules. In any event, the court must address this issue before proceeding to the substance of the plaintiffs' claim.

The plaintiffs assert claims under three sections of the APA: 5 USC § 706, 5 USC § 552b and 5 USC § 553. Section 706 states:

> The reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of any agency hearing provided by statute; or (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

The plaintiffs' claims under § 706 essentially arise from the plaintiffs' allegations that, by violating the Rules, the Board's actions can be set aside by the court, either because they were arbitrary and capricious or because they exceeded the statutory authority granted the Board by the Rules. Sections 552b and 553, on the other hand, provide substantive rules of conduct for agencies in holding meetings and rulemaking, respectively. The plaintiffs' claims under §§ 552b and 553, therefore, arise from allegations that the Board violated those substantive provisions in addition to violating the Rules. For the foregoing reasons, however, the court cannot review the plaintiffs' claims under any of these sections because TVARS is not an agency under the controlling definitions.[21]

The definition of agency for the purposes of §§ 706, 552b, and 553 expressly excludes "agencies composed of representatives of the parties or of representatives of organizations of the parties to the disputes determined by them." *See* 5 USC § 701 (which defines agency for the

---

[21] While the Prior Opinion indicated that the APA *may* be applicable to a review of TVARS' actions and that, if it were, the court may be able to find a clear violation of the express Rules to be arbitrary and capricious or to exceed the scope of authority under the APA and therefore invalid, the Prior Opinion did not in fact make any ruling regarding the applicability of the APA, nor was it before the court at that time. *See* Prior Opinion at p. 23.

purposes of § 706); 5 USC § 551 (which defines agency for purposes of §§ 552b and 553).

While there is limited case law interpreting this exclusion, the court is bound by the plain

language of the statute to find that the APA does not apply to an entity such as TVARS, because

the Board is comprised of representatives of TVA and TVARS members.  In what appears to be

the only Sixth Circuit opinion interpreting this APA exclusion, the Sixth Circuit found that the

exclusion applies to the National Railroad Adjustment Board ("NRAB"), which is comprised

solely of members selected by the railroads and members selected by the labor organizations of

the employees and which settles employment disputes between these entities.  *Jones v. Seasbord*

*Sys. R.R.*, 783 F.2d 639 (6th Cir. 1986).  The Sixth Circuit therefore held that NRAB's resolution

of an employment-related dispute between a labor union and a railroad could not be reviewed by

the court under the APA.  *Id*. at 642.  The plaintiffs attempt to distinguish TVARS from NRAB

by arguing that TVARS does not adjudicate disputes between TVARS members and TVA.  The

statutory language of § 551, however, does not state that an agency must be an adjudicative body

in order for the exception to apply.  The court finds that the Board, in the course of administering

the retirement plan and monitoring its funding from TVA, is necessarily tasked with determining

disputes between TVARS members and TVARS related to the interpretation and application of

the Rules, as well as determining disputes between beneficiaries' interests and TVA's interests,

including the dispute that gives rise to this action.

     The plaintiffs argue that, at a minimum, the court cannot rule on whether the exclusion

applies at the summary judgment phase but must conduct additional factual inquiries into

whether the seventh member of the Board (who is elected by the other directors rather than

appointed by TVA or elected by the members) qualifies as a representative of either TVA or the

plan members, as well as whether TVARS has ever adjudicated disputes between TVA and

TVARS members in the past, before a ruling can be made.  The court disagrees, and holds that, as a matter of law, the exclusion applies and the APA claim cannot proceed.[22]

## III. <u>Fiduciary Duty Claim</u>

As expressly held in the Prior Opinion, the state common law of fiduciary duty is not applicable in this context, and no claims under state common law can be maintained in this action.  In the complaint dismissed by the Prior Opinion, the plaintiffs' claim that they were entitled to relief because the Board's actions allegedly violated the Rules was most clearly laid out in the plaintiffs' fiduciary duty claim.  The Prior Opinion noted that, while the Board appeared to have an obligation to uphold the Rules, the common law fiduciary duty claim could not proceed as a matter of law.  The Prior Opinion, however, dismissed the fiduciary duty claim *without prejudice* and expressly directed the plaintiffs to reframe the allegations contained in their fiduciary duty claim under some other legally cognizable theory, such as a claim for violation of the APA.  The Prior Opinion further indicated that, in order for such a claim to proceed, the plaintiffs must show: 1) that the Rules or the Trust Agreement imposed fiduciary duties on the Board, separate and apart from fiduciary duties under the common law; and 2) that a cause of action, such as a violation of the APA, would allow the plaintiffs to challenge a breach of these duties alongside other violations of the Rules.

The plaintiffs appear to have misunderstood the directive of the Prior Opinion.  The Prior Opinion cannot be read to have held that the fiduciary duty *claims* themselves could proceed, but rather that the *allegations* underlying the fiduciary duty claims *may* provide a basis for claims

---

[22] The court does not need to reach the question of whether – as TVA asserts – review of the plaintiffs' claim under § 553 is also excluded pursuant to the provision exempting agency action involving "a matter relating to agency management or personnel or to public property, loans, grants, benefits, or contracts" from the § 553 requirements.  5 U.S.C. § 553(a)(2).

going forward.  The Complaint restates a claim for breach of fiduciary duty, arguing that the Board's actions violated both a fiduciary duty of care to follow the Rules as well as a duty of loyalty to TVARS members that the plaintiffs claim is implied in the Rules.  While the plaintiffs do now argue that the fiduciary duties arise from the Rules themselves, rather than from the common law, they still fail to provide a cognizable basis for review.  The fiduciary duty claim as it is now laid out is essentially another version of a private right of action to enforce the Rules.  Therefore, even to the extent that there are fiduciary duties found in the Rules, the fact that – as discussed above – there is no private right of action to enforce the Rules applies with equal force to a claim to enforce fiduciary duties found in the rules as to enforce the express provisions of the Rules regarding reductions in benefits or administration of funding.  Accordingly, the plaintiffs' fiduciary duty claim fails as a matter of law.

Moreover, even if such a claim were allowed to proceed, the plaintiffs have actually failed to support their allegations that a fiduciary duty of loyalty is found in the Rules.  The plaintiffs have not pointed to any express language in the Rules creating a fiduciary duty owed by the Board to the plaintiffs but, instead, appear to argue that such duties are *implied* in the Rules.  This allegation expressly contradicts the findings of the Prior Opinion that there is no implied fiduciary duty of loyalty to beneficiaries, even under ERISA claims, with respect to amending a retirement plan.  *See* Prior Opinion at pp. 21-22.

For all of these reasons, the plaintiffs' fiduciary duty claims cannot proceed as a matter of law.

## IV.     Takings Clause Claim

The plaintiffs argue that, to the extent the COLAS and the pre-Amendments interest rate on the Annuity Account were vested under the Rules, the Board not only violated the Rules in

reducing those expected benefits, but also violated the Takings Clause of the United States Constitution because the plaintiffs had a property interest in those expected benefits. The plaintiffs cite three cases to support the argument that the Rules created a contractual obligation and that, accordingly, their expectation of benefits under the Rules should be construed as a constitutionally protected property right in contract. In addition to the fact that the Prior Opinion has already held – in light of *Kinzer* and *Beaman* – that the court can enforce no contractual obligation arising from the Rules, the cases cited by the plaintiffs suggest a very high bar for finding contractual rights to arise from legislation.

In *Lynch v U.S.*, which the plaintiffs cite for the proposition that a contract with the United States can create a property right under the Takings Clause, the Supreme Court expressly differentiated pensions from the insurance policies it upheld as creating contractual rights, stating: "Pensions, compensation allowances, and privileges are gratuities. They involve no agreement of parties; and the grant of them creates no vested right." 292 U.S. 571, 577 (1934). The Court further noted that the insurance policies at issue were expressly rendered contractual in nature by Congress, which enacted legislation that expressly allowed claims for breach of these insurance contracts to be brought in U.S. courts. *Id*. at 581. There is no such legislation with respect to benefits under TVARS. The plaintiffs also cite to *Mascio v. Public Employees Retirement System Of Ohio* for the proposition that a vested benefit under a pension statute is a contractual right. 160 F.3d 310 (6th Cir. 1998). The pension program at issue in *Mascio*, however, is governed by an Ohio vested rights statute that has been held by Ohio courts to create a contractual obligation under Ohio law. *Id*. at 313. The Rules, to the contrary, have been given no such contractual effect under federal law but, conversely, have been expressly held *not* to give rise to rights in contract. *See Beaman*, 928 F.2d 1132; *Kinzer*, 142 F.2d 833. Finally, in the third

22

case cited by the plaintiffs – *Parella v. Retiremnet Board of the R.I. Employees' Retirement System* – the First Circuit expressly held that a legislative enactment does not give rise to a contractual right unless there is clear legislative intent to create such rights, even when the statute at issue expressly references the *vesting* of benefits. 173 F.3d 46, 60 (1st Cir. 1999).

The court notes that *Parella* also indicates that, in a hypothetical situation where a statute creates a public pension plan for employees and includes a clause expressly prohibiting future amendments that reduce vested benefits, it may be appropriate – in light of a contemporary trend (counter to *Lynch*) to recognize contractual rights in pension plans – to read such a statute as intending to create contractual obligations. Under this theory, it may in fact be appropriate to interpret the Rules as creating a contractual obligation for TVARS to provide vested benefits to beneficiaries. In order for the court to find such an obligation, however, it would have to explicitly overturn *Kinzer*, which cannot be done without clear direction from the Sixth Circuit.[23]

Absent a contractual obligation intentionally created by the statute, there is no constitutional property right for the purposes of a Takings Clause claim in the expectation of future cost of living adjustments to retirement benefits that are provided by legislative enactment. *See Zucker v. U.S.*, 758 F.2d 637 (Fed. Cir. 1985) (While a statutory entitlement to benefits may give rise to government-fostered expectations that in the private sector could have formed the basis of a contract, this expectation "does not rise to the level of 'property' protected by the

---

[23] Although this issue was not fully briefed in this action, the Sixth Circuit might also allow, short of overturning *Kinzer*, that the court may reconsider the holding in *Kinzer* in light of the 1974 amendments to the Rules, which may have fundamentally changed the nature of the Rules with respect to whether they create a contractual obligation. At this time, however, the court has no such guidance from the Sixth Circuit on this matter.

takings clause"); *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 633 F.Supp. 511 (D.D.C. 1986) (aff'd by Sup. Ct., 479 U.S. 878 (1986)).

For these reasons, the court finds that the plaintiffs' Takings Clause claims fail as a matter of law.

## V.      **Estoppel**

Finally, the plaintiffs argue that their claims can be decided under the theory of equitable estoppel. As an initial matter, it is not entirely clear that this claim was adequately pled in the Complaint and therefore properly before the court. The Complaint states only that "TVA should be estopped from arguing that the minimum annual funding requirement in the [Rules] is not analogous to the CSRS annual funding requirements." In their briefing, however, the plaintiffs appear to ask the court to hold that the Board is estopped from implementing the Amendments or changing the interest rate on the Annuity Account on the basis that the plaintiffs relied on the Board's pre-Amendments representations, including the Rules themselves, which led them to believe that such actions were prohibited and therefore would not be taken.

An equitable estoppel claim based on representations in the Rules themselves cannot proceed as a matter of law. As discussed above and in the Prior Opinion, under the prior Sixth Circuit holdings in *Kinzer* and *Beaman*, the Rules are given the force of a legislative enactment and, therefore, are not subject to common law contract theories, which include equitable estoppel. Thus, for the same reasons the court cannot entertain a breach of contract claim or a Taking Clause claim based on a contractual obligation arising from the Rules, the court cannot entertain an equitable estoppel claim arising from the Rules either.

It is a closer question, however, as to whether the plaintiffs' equitable estoppel claim may proceed as to the Board's alleged representations prior to the Amendments that the anticipated

COLAS were vested benefits. Under federal law, estoppel generally requires a misrepresentation by the defendant, reasonable reliance by the plaintiff, and detriment. *See Apponi v. Sunshine Biscuits, Inc*, 652 F.2d 643 (6th Cir. 1981). As the parties agree, however, the standard for bringing an equitable estoppel claim against a governmental entity requires a heightened burden, including a demonstration of affirmative (intentional or reckless) misconduct. *Michigan Express, Inc. v. U.S.*, 374 F.3d 424 (6th Cir. 2004); *U.S. v. Guy*, 978 F.2d 934 (6th Cir. 1992); *see also Bunting v. R.R. Ret. Bd.*, 7 F.3d 232 (6th Cir. 1993) (acknowledging that, while not prohibited, there is "policy disfavoring estoppel against the government"). Moreover, the Supreme Court has held that "the rule of estoppel by judgment obviously applies only to bodies exercising judicial functions; it is manifestly inapplicable to legislative action." *Ariz. Grocery Co. v. Atchinson, T. & S.F. Ry. Co.*, 284 U.S.370 (1932); *see also Heckler v. Cmty. Health Servs. of Crawford County, Inc.*, 467 U.S. 51 (1984) ("When the government is unable to enforce the law because the conduct of its agents gives rise to an estoppel, the interest of the citizenry as a whole in obedience to the rule of law is undermined.")

The plaintiffs argue that the Board's representations in communications to TVARS beneficiaries, which allegedly indicated that the COLA benefits at issue were vested and could not be revoked, were, at a minimum, reckless misrepresentations that were relied on by the plaintiffs to their detriment. The plaintiffs overlook, however, that, in making these representations, the Board was simply representing its interpretation of the governing legislation at the time the representations were made and only later acted to make changes to that legislation through the Amendments. The plaintiffs now seek to estop the Board from making those legislative changes, but whether such changes are enforceable is subject strictly to the question of whether the Board had the authority to make those changes under the provisions of the Rules

themselves, or whether there are any contractual obligations created by the Rules that would render these changes unconstitutional (questions, which for the reasons discussed above, the court does not address in this action).  The Amendments cannot give rise to a finding that the Board acted recklessly or intentionally in communicating its interpretation of the pre-Amendments Rules, nor can those prior interpretations estop legislative action to change the Rules.

The cases cited by the plaintiffs where estoppel has been applied against a government are inapposite to the facts at issue in the present case, as none of these cases involved representations that were made as part of a legislative function or changes to legislation (rather than error) that rendered those representations untrue.  *See Bunting*, 7 F.3d 232 (estopping a government agency that confirmed an erroneous figure for the value of a lien on plaintiff's medical costs from later correcting the error to demand a higher lien payment from the plaintiff); *Douglas v. U.S.*, 658 F.2d 445. 449 (6th Cir. 1981) (estopping the U.S. Navy from denying review of an administrative claim on the basis that the plaintiff did not submit necessary documentation when the Navy had previously confirmed to plaintiff's counsel that this documentation was not necessary); *L.E.F., Inc. v. U.S.*, No. 95-cv-75068, 1997 WL 1037879 (E.D. Mich. Jul. 23, 1997) (estopping the IRS from collecting taxes from plaintiff after an IRS officer told the plaintiff that such taxes were not owed); *Gamble v. U.S.*, 648 F.Supp. 438 (N.D. Ohio 1986) (estopping the government from denying that a doctor in a government hospital is a government employee when the hospital held him out as such).

For these reasons, the court cannot grant equitable estoppel on the plaintiffs' behalf.

## <u>CLAIMS AGAINST TVARS</u>

The court notes that, while TVA's Motion for Summary Judgment addresses all claims against both defendants in this action, defendant TVARS has neither joined TVA's motion nor filed its own motion seeking summary judgment for the claims against it. In fact, to the contrary, TVARS' briefing on the pending motions indicates that it supports the plaintiffs' position as to at least some of the claims and allegations. The court finds, however, that the same basis for dismissing the claims against TVA applies with equal force to the claims against TVARS, and that none of the plaintiffs' claims against either defendant can proceed as a matter of law. Accordingly, the court has the authority to grant summary judgment in favor of TVARS *sua sponte* and dismiss all claims in this action. *See In re Century Offshore Mgmt. Corp.*, 119 F.3d 409, 412 (6th Cir. 1997) (holding that the fact that a party "has not filed its own summary judgment motion does not preclude the entry of summary judgment if otherwise appropriate") (*citing Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

## POLICY IMPLICATIONS OF THIS DECISION

This decision essentially leaves the TVARS beneficiaries with no grounds to seek judicial enforcement of the Rules as related to their retirement benefits. Regardless of whether the Amendments at issue in this litigation actually violated the Rules, this is a difficult result to reach and one that seems inconsistent with other legislative enactments that allow judicial review of administrative decisions related to analogous retirement programs.[24] The court recognizes that TVARS is a unique entity that simply does not fit squarely within the categories of federal

---

[24] Administrative decisions that relate to private pension plans are governed by ERISA. Administration of the Civil Service Retirement System is overseen by the Office of Personnel Management, whose decisions are subject to agency review by the Merit Systems Protection Board ("MSPB") under 5 U.S.C. § 8347; in turn, the MSPB's decisions are subject to judicial review under 5 U.S.C. §7703. *See, e.g., Cheeseman v. Office of Pers. Mgmt.*, 791 F.2d 138 (Fed. Cir. 1986).

agency, private pension board, or federal enactment intentionally creating contractual obligations, any of which would allow its actions to be subject to judicial review, even if only under the arbitrary and capricious standard. Perhaps it is the case that the Board – being comprised of representatives of both TVARS members and TVA – was intentionally given this type of protection in order to allow TVA (an entity with the distinctive role of providing public utilities) to carry out its public purpose and employ individuals in the region without being subject to the threat of litigation by beneficiaries. Or, perhaps it is simply an oversight that no legislation has been enacted which would allow TVARS beneficiaries to seek judicial enforcement of the Rules to protect their own pensions, to which they directly contributed their own funding and upon which they relied in planning their retirement. Ultimately, it is not the role of the district court to make this determination, in the absence of legislative action and without any guidance from the higher courts. The court finds itself limited by the tools it has at its disposal, which do not include at this time a basis for finding a cause of action that would entitle the plaintiffs to the relief they seek.

## CONCLUSION

For the foregoing reasons, TVA's Motion for Summary Judgment will be granted and this action will be dismissed with prejudice. The Plaintiffs' Partial Motion for Summary Judgment will be denied as moot.

An appropriate order will enter.

ALETA A. TRAUGER
United States District Judge