**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **CHARLES T. EVANS, DAVID MCBRIDE,** | ) | |
| **RONALD E. FARLEY, LARRY J. SIMPSON,** | ) | |
| **ROBERT B. BONDS, and STEVE HINCH,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **No. 3:10-cv-217** |
| | ) | **Judge Aleta A. Trauger** |
| **TENNESSEE VALLEY AUTHORITY** | ) | |
| **RETIREMENT SYSTEM and** | ) | |
| **TENNESSEE VALLEY AUTHORITY,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM**

Pending before the court are three motions: 1) a Motion for Judgment on the

Administrative Record as to All Remanded Claims (Docket No. 240), filed by the defendant the

Tennessee Valley Authority (the "TVA"), to which the plaintiffs have filed a Response in

opposition (Docket No. 248); 2) a Motion to Amend the Complaint and Modify the Scheduling

Order filed by the plaintiffs (Docket No. 244), to which the TVA has filed a Response in

opposition (Docket No. 246), and the plaintiffs have filed a Reply (Docket No. 253); and 3) a

Motion for Summary Judgment filed by the plaintiffs (Docket No. 247), to which the TVA has

filed a Response in opposition (Docket No. 251), the Tennessee Valley Authority Retirement

System (the "TVARS") has filed a Response in opposition (Docket No. 258), and the plaintiffs

have filed a Reply (Docket No 259).  For the reasons discussed herein, the TVA's Motion for

Judgment on the Record will be granted, and the plaintiffs' Motion to Amend and Motion for

Summary Judgement will be denied.

## BACKGROUND AND PROCEDURAL HISTORY

The TVA was created by Congress in the 1930s to manage electric power production, navigation, and flood control in the Tennessee River region. The TVARS was subsequently created by the TVA in 1939 to provide retirement income to TVA employees and their families. The TVARS is governed by Rules and Regulations that have been held to have the force of legislation (the "Rules"). This action, brought by beneficiaries of the TVARS, challenges amendments to the Rules that were passed by the TVARS Board on August 17, 2009 and went into effect On January 1, 2010 (the "Amendments").

The Amendments made four primary changes to the TVARS Rules: 1) the annual Cost-of-Living Adjustments ("COLAs") given to eligible TVA retirees, which had previously been determined by the Consumer Price Index ("CPI"), were capped at zero for 2010, 3% for 2011, zero for 2012, and 2.5% for 2013; 2) the eligibility age to receive COLAs was raised from 55 to 60 for employees who retired after January 1, 2010; 3) the interest rate on members' contributions to the system's Annuity Savings Account was lowered from 7.25% to 6%; and 4) a new provision was added to the Rules, which suspended the requirement for the TVA to make contributions to the TVARS for years 2010-2013, in exchange for a lump-sum contribution of $1 billion. Following the Amendments, the TVARS Board did not ask for any contributions from the TVA to fund the retirement system for the years 2010 through 2013 but, instead, debited an account known as the Excess COLA Account (a sub-account of the system's Accumulation Account) to cover benefit payouts over those years. The plaintiffs take the position that the defendants violated both the substantive and procedural provisions of the Rules by passing the Amendments.

This lawsuit was initially filed on March 5, 2010 (Docket No. 1.) After the court granted an early Motion to Dismiss (Docket No. 44), the plaintiffs filed the Amended Complaint, which

is the current operative pleading, on September 21, 2010 (Docket No. 47). The Amended Complaint brings claims against the TVARS and the TVA for violation of the Administrative Procedures Act (the "APA"), violation of the Takings clause of the United States Constitution, breach of fiduciary and other duties owed by the TVARS to the TVARS beneficiaries, and equitable estoppel, and seeks both declaratory and compensatory relief.[1]

After a period of protracted litigation, on August 19, 2015, the court issued an Order granting summary judgment in favor of the defendants as to all claims and dismissing the action with prejudice. (Docket No. 235.) A brief overview of the facts and procedural history up to that point in time can be found in the court's Memorandum accompanying that Order. (Docket No. 234 (the "Prior Opinion").) Briefly, in the Prior Opinion, the court held that summary judgment in favor of the defendants was warranted because the Rules do not create contractual or fiduciary duties owed by the defendants nor do they create a property right, the APA does not apply, and there is no cognizable private right of action pursuant to which the plaintiffs can challenge a violation of the Rules.

The plaintiffs appealed the court's dismissal of the action and, on August 12, 2016, the Sixth Circuit Court of Appeals affirmed in part, reversed in part, and remanded the action back to the district court. (Docket No. 238 (*Duncan v. Muzyn*, No. 15-6019 (6th Cir. Aug. 12, 2016).) Specifically, the Sixth Circuit agreed that the APA does not apply to this action and also agreed that the Rules do not give rise to a right in contract or create a fiduciary duty. The Sixth Circuit held, however, that the plaintiffs have the right to bring an action challenging a violation of the Rules, which is essentially what the plaintiffs have done, regardless of the labeling of the claims

---

[1] The Amended Complaint also contained claims for breach of the due process and equal protection clauses of the United States Constitution, and breach of the Government in the Sunshine Act, though these claims were subsequently abandoned. (*See* Docket No. 234, p. 14.)

in the Amended Complaint. The Sixth Circuit cited *Mach Mining, LLV v. EEOC*, 135 S.Ct. 1645, 1651 (U.S. 2015), for the presumption in favor of reviewing agency action even where the APA does not apply and held that the defendants are agencies for this purpose. The Sixth Circuit further held that the COLAs are not vested under the Rules and, as a result, a reduction of the COLA benefits does not violate the Rules' prohibition against amendments that reduce accrued and vested benefits, nor can the reduction of the COLAs support a Takings Clause claim.[2] As a result, the Sixth Circuit affirmed the district court's dismissal of the Takings Clause claim and remanded the action for the court's consideration of the plaintiffs' remaining claims for violation of the Rules. On September 7, 2016, the Sixth Circuit issued the Mandate in this action. (Docket No. 239.)

On September 30, 2016, the TVA filed its Motion for Judgment on the Administrative Record as to All Remanded Claims (Docket No. 241), along with a Memorandum in Support (Docket No. 242). The TVA identified five bases for the plaintiffs' claims that the defendants violated the Rules: 1) the allegations that the defendants violated the provision of the Rules requiring notice to the TVA and to TVARS members of proposed amendments; 2) the allegation that, by reducing the COLA benefits, the Amendments violated the provision in the Rules prohibiting the reduction of certain accrued benefits; 3) the allegation that, by reducing the Annuity Interest Rate, the Amendments again violated the prohibition against reducing certain

---

[2] The Sixth Circuit did not address the fact that the plaintiffs also argue that the interest rate on the Annuity Account is vested. The Sixth Circuit opinion could possibly, therefore, be read to leave open the question of whether a Takings Clause claim could survive based on the reduction in the Annuity Account interest rate. Nevertheless, the court finds that, as discussed in greater detail in the subsequent analysis section, the Annuity Account interest rate was not an accrued benefit and was, therefore not protected from reduction under the Rules. Accordingly, there is no need to reach the question of whether a Takings Clause claim can survive in this action, and the court will analyze only the question of whether the plaintiffs may be able to survive summary judgment based on their claims that the defendants violated the Rules.

accrued benefits; 4) the allegation that suspending the TVA's contributions for 2010 through 2013 violated the Rules; and 5) the allegation that debiting the Excess COLA Account during the years the TVA was not contributing to the TVARS violated the Rules. The TVA raises substantive arguments that none of these things, in fact, constitutes a violation of the Rules. The TVA also argues that the plaintiffs' claim arising from the debiting of the Excess COLA Account is not properly before the court because the plaintiffs did not adequately allege such a claim in the Amended Complaint.

On October 12, 2016, the plaintiffs filed their Motion to Amend the Complaint and Modify the Scheduling Order (Docket No. 244), along with a Memorandum in support (Docket No. 245). By this motion, the plaintiffs seek to add language to the pleadings clarifying their intent to bring a claim that the defendants violated the Rules by debiting the Excess COLA Account. The plaintiffs take the position that this claim was properly pled in the Amended Complaint and an amendment is unnecessary but state that they wish to amend the Amended Complaint anyway, so as to "put TVA's procedural objection to rest and avoid the possibility of another remand." (Docket No. 245, p. 2.) On October 31, 2016, the TVA filed a Response in opposition to the plaintiff's Motion to Amend. (Docket No. 246.)

Also on October 31, 2016, the plaintiffs filed their Motion for Summary Judgment (Docket No. 247), along with a Statement of Undisputed Material Facts (Docket No. 249). On that day, the plaintiffs also filed a Response in opposition to the TVA's Motion for Judgment on the Record. (Docket No. 248.) In their opposition, the plaintiffs concede that they are not actually pursuing a claim that the four-year suspension of the TVA's contributions to the TVARS violated the Rules. On November 11, 2016, the TVA filed a Response in opposition to the plaintiffs' Motion for Summary Judgment. (Docket No. 251.) On November 14, 2016, the

plaintiffs filed a Reply in support of their Motion to Amend. (Docket No. 253.) On November 16, 2016, the TVA filed a Response to the plaintiffs' Statement of Undisputed Material Facts in support of their Motion for Summary Judgment. (Docket No. 254.) On November 28, 2016, the TVARS filed a Response to the plaintiffs' Motion for Summary Judgment (Docket No. 258) and a Response to the plaintiffs' Statement of Undisputed Material Facts in support of their Motion for Summary Judgment (Docket No. 257). On December 2, 2016, the plaintiffs filed a Reply in further support of their Motion for Summary Judgment. (Docket No. 259.)

Because the facts at issue in this case have been the subject of several prior opinions, the court will not recount in this section all of the facts relevant to the analysis but, instead, will discuss the facts in the analysis section as necessary to explain the court's findings on the merits.

## ANALYSIS

As the parties agree, there are now four claims at issue: 1) the defendants violated the procedural requirements of the Rules by not providing proper notice of the Amendments to the TVARS members; 2) the defendants violated the substantive provisions of the Rules by reducing the COLAs; 3) the defendants violated the substantive provisions of the Rules by reducing the interest rate on the Annuity Account; and 4) the defendants violated the Rules by improperly debiting the Excess COLA Account. The parties dispute whether this fourth claim is properly before the court and, as a result, the plaintiffs have filed a Motion to Amend the Pleadings. The court will turn first to this motion and then will analyze the claims on the merits.

## I.    MOTION TO AMEND

The TVA correctly points out that the plaintiffs do not expressly allege in the Amended Complaint that the debiting of the Excess COLA Account violates the Rules. Nevertheless, the court finds that this claim was adequately pleaded such that the court may review this basis for finding that the defendants violated the Rules. The Amended Complaint has been interpreted by

this court, and by the Sixth Circuit, to essentially bring one claim against the defendants for violating the Rules, with several different violations alleged. Moreover, the Amended Complaint outlines in detail the entire course of proceedings that began with the consideration of the Amendments by the TVARS Board, continued through the TVARS Board's vote on the Amendments and notification to the TVARS members, and culminated in the implementation of the Amendments and the actions of the TVARS Board in continuing to operate the retirement system in light of the Amendments over the following years. The Amended Complaint asserts that the Excess COLA Account was debited to cover the operations of the System between 2009 and 2013, and links this debiting to the suspension of contributions by the TVA that was mandated by the Amendments.

Reading the Amended Complaint in the light most favorable to the plaintiff, the court finds that it is proper for the court to review whether any of this conduct violates the Rules, including the debiting of the Excess COLA Account. In addition, the Sixth Circuit opinion on appeal indicates that this action involves claims that the TVARS Board "violated provisions related to an account called the 'Excess COLA Account.'" (Docket No. 238, p. 8.) Indeed, for this reason, the plaintiffs also concede that their Motion to Amend is truly unnecessary and that a claim for violating the Rules by debiting the Excess COLA Account is already before the court. The court agrees that the Motion to Amend is unnecessary and will, therefore, deny this motion as moot without considering the question of whether an amendment would be appropriate at this time. For the same reasons, the court rejects the TVA's argument that a claim for violating the Rules by debiting the Excess COLA Account is not properly before the court and will address the merits of this claim in the subsequent analysis.

## II.  MOTIONS FOR JUDGMENT ON THE RECORD AND SUMMARY JUDGMENT

By filing the pending motions, the parties appear to agree that the claims in this action can be decided based on the undisputed facts in the record and the Rules themselves.  The TVA argues that the court should look only to the "administrative record" in deciding the pending motions, referencing a number of documents the TVA manually filed in the record in September of 2014 (Docket No. 185).  Subsequent to that filing, however, the TVA itself filed a previous motion for summary judgment, which was granted by the court prior to the appeal and remand.  The defendants point to no authority to support limiting the court's review to these documents, nor is it entirely clear from the record the source of this particular group of documents.  Moreover, the Sixth Circuit's decision on appeal did not suggest that the court should limit its analysis to a review of whether the defendants, as agencies, acted in an arbitrary and capricious manner when amending the Rules or implementing the Amendments.  Rather, the Sixth Circuit simply instructed that this court should review the question of whether the Rules were violated.  There has been no *impartial* administrative agency that has previously adjudicated this issue and to which the court must give deference.  For these reasons, the court will treat the pending motions as cross-motions for summary judgment and will consider all evidence in the record cited by the parties to determine whether the defendant agencies have acted in violation of the Rules.

The TVARS argues that the court should give deference to its interpretation of the Rules, but this argument has already been expressly rejected by the Sixth Circuit.  (Docket No. 238, pp. 18-20.)  To support its position, the TVARS cites to Rule 3.7, in a section of the Rules entitled "Administration of the System," which states that "[t]he board shall have sole and exclusive responsibility for determining under the [Rules] what benefits are payable by the retirement

system and to whom they shall be paid; and the board's interpretation of and application of the [Rules] in these and all other matters pertaining to the System's operations and its determination of the facts in making any such application shall be final and conclusive as to all parties."  It is clear from the text of this language, however, that this provision refers to the TVARS Board's discretion with respect to carrying out the functions of the retirement system, not to interpreting the Rules in the course of litigation.  As a result, the court will conduct its own interpretation of the Rules as needed to determine the plaintiffs' claims on the merits.

### A.  Legal Standard for Summary Judgment

Federal Rule of Civil Procedure 56 requires the court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  To win summary judgment as to the claim of an adverse party, a moving defendant must show that there is no genuine issue of material fact as to at least one essential element of the plaintiff's claim.  Once the moving defendant makes its initial showing, the burden shifts to the plaintiff to provide evidence beyond the pleadings, "set[ting] forth specific facts showing that there is a genuine issue for trial."  *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  Conversely, to win summary judgment as to its own claims, a moving plaintiff must demonstrate that no genuine issue of material fact exists as to all essential elements of her claims.  "In evaluating the evidence, the court must draw all inferences in the light most favorable to the non-moving party."  *Moldowan*, 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

At this stage, "'the judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'"  *Id.* (quoting

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  But "[t]he mere existence of a

scintilla of evidence in support of the [non-moving party's] position will be insufficient," and the

party's proof must be more than "merely colorable."  *Anderson*, 477 U.S. 242, at 252.  An issue

of fact is "genuine" only if a reasonable jury could find for the non-moving party.  *Moldowan*,

578 F.3d at 374 (citing *Anderson*, 477 U.S. at 252).

"The standard of review for cross-motions of summary judgment does not differ from the

standard applied when a motion is filed by only one party to the litigation."  *Ferro Corp. v.

Cookson Grp., PLC*, 585 F.3d 946, 949 (6th Cir. 2009) (citing *Taft Broad Co. v. U.S.*, 929 F.2d

240, 248 (6th Cir. 1991)).  The court need not grant judgment as a matter of law for either side,

but must consider for itself whether there is a dispute of material fact.  *Taft*, 929 F.2d at 248.

"The court must evaluate each party's motion on its own merits, taking care in each instance to

draw all reasonable inferences against the party whose motion is under consideration."  *Id.*

(quoting *Mingus Constructors, Inc. v. U.S.*, 812 F.2d 1387 (Fed. Cir. 1987)).

### B.  The Merits of the Plaintiffs' Claims

The plaintiffs allege that the defendants violated both the substantive and procedural

provisions of Rule 13, which provides as follows:

> These Rules and Regulations may be amended by the Board from time to time,
> provided that the Board gives at least 30 days' notice of the proposed amendment
> to the TVA and to the members, and further provided that the TVA may, by
> notice in writing addressed to the Board within said thirty days, veto any such
> proposed amendment, in which event it shall not become effective.  No
> amendment to these Rules and Regulations shall be adopted which will reduce the
> then accrued benefits of the existing members or beneficiaries which are
> nonforfeitable or covered by accumulated reserves held therefor.[3]

---

[3] Because the claims in this action are based on allegations that the Amendments violated the
Rules that were in effect at the time the Amendments were passed, the citations in this
Memorandum, unless otherwise noted, are to the pre-Amendment version of the Rules, effective
as of 2008 (manually filed in the record (Docket No. 185) and labelled as TVARS 000-95-
00191).

Specifically, the plaintiffs allege that 30 days' notice of the Amendments was not properly given to the TVARS members. They further allege that the future COLAS and the future interest rate on the Annuity Account were both accrued at the time the Amendments were passed and were either vested or were covered by accumulated reserves held therefore. Finally, the plaintiffs allege that the defendants violated the provisions of Rule 10.D by debiting the Excess COLA Account for purposes other than paying COLAs. The court will now address each of these claims in turn.

### 1. The Defendants Did Not Violate the Procedural Rules Regarding Notice

As quoted above, Rule 13 requires that 30 days' notice of any amendment to the Rules be given to the TVA and the TVARS members. The plaintiffs raise two arguments for why the actions of the defendants violated this provision. First, the plaintiffs argue that 30 days' notice should have been given before, rather than after, the TVARS voted on the Amendments. Second, the plaintiffs argue that the notice that was given – announcements in the TVARS newsletter and postings on the TVA's office bulletin boards – was not sufficient under the Rules. The pertinent facts are undisputed: the TVARS Board voted on the Amendments on August 17, 2009, the newsletter announcements and bulletin board postings were not issued until several days after the vote, and the Amendments were scheduled to go into effect on January 1, 2010, assuming the TVA did not veto the Amendments, which it did not. The parties also do not dispute that the TVA had been aware of the Amendments prior to the vote and that there had been much discussion of the Amendments prior to the vote, including some public debates that included the participation of the TVARS members and beneficiaries.

The plaintiffs concede that, under the Rules, notice to members and to the TVA should run concurrently. Indeed, this is consistent with the plain language of Rule 13, which states that,

within "said thirty days" of notice to both the TVA and the members, the TVA may veto an amendment and prevent it from becoming effective. The plaintiffs argue, however, that this notice should have been given before the Board voted rather than after. While Rule 13 may be vague as to whether notice should occur before or after the Board votes, the court finds that the plaintiffs' interpretation is not the best reading of Rule 13. The wording of Rule 13 states that, if the TVA issues a veto, this is an event that will prevent an amendment from becoming effective. If the Board has not yet voted on an amendment during the 30-day veto period, however, the amendment would not be on track to become effective anyway, and the veto would not prevent the implementation of the amendment so much as block the Board's vote in the first place. Moreover, requiring a veto to take place prior to a vote would be an inefficient process, as the TVA would be required to consider amendments that might not pass the Board's election process. Finally, to the extent there is any ambiguity over how to read Rule 13's notice provisions, the course of dealing between the parties is informative, and the parties concede that notice of past amendments (including the amendments that initially established the COLA benefits) has been given *after* the Board voted, without any objection from the TVARS members.

The plaintiffs' argument that the notice period should take place before the vote hinges primarily on Rule 13's use of the phrase "proposed amendment." The plaintiffs argue that, once the Board has voted to pass an amendment, it is no longer merely "proposed." What the plaintiffs overlook, however, is that it is the very veto power of the TVA that renders even an amendment that has been passed by the Board a proposed amendment rather than a final amendment. The best reading of Rule 13 is that the amendment only becomes final, not after the Board has voted, but once the TVA veto period has elapsed and no veto has been issued.

Next, the plaintiffs liken Rule 13 to the notice and comment provisions under the APA (5 U.S.C. § 553) and argue that the Rules should be likewise interpreted to require pre-vote notice. The plaintiffs cite the Sixth Circuit case *State of Ohio Dept. of Human Servs. v. U.S. Dept. of Health & Human Servs., Health Care Fin. Admin.*, 862 F.2d 1228, 1233 (6th Cir. 1988), as interpreting this APA provision to require notice prior to a vote adopting a new rule, in order to give those affected an opportunity to participate in the process. The notice provisions of the APA, however, arise in an entirely distinct context and apply to agencies that are not comprised of members of the affected parties. The plaintiffs argue that the same logic should apply here because the purpose of the notice requirement in Rule 13 is for TVARS members to have the opportunity to lobby the Board to vote against Amendments that would not be in the members' interest. Not only is this proposition unsupported by the plain text of the Rules, which makes no provisions for such lobbying, it is also undermined by the very nature of the TVARS administration as provided for by the Rules.

Rule 13 provides that notice is to be given to members only (with members defined under Rule 2.3 to include only current employees and those who have ceased their employment within the past year for reasons other than retirement or death and who have not withdrawn their contributions). Notice is not required to be given to all beneficiaries of the retirement system, who may have similar interests in lobbying for or against certain amendments (including those at issue in this action).[4] Moreover, the Rules provide that the Board is already comprised of

---

[4] The plaintiffs argue that, despite this definition, retirees can still be TVARS members for some purposes and are entitled to notice of amendments to the Rules. To support this argument, the plaintiffs cite provisions in the Rules that refer to "retired members" or the "retirement of members" (Rules 6.A.2, 18.A.1, and 11.D.4). These provisions, however, do not say that a person will remain a member after retirement but appear, instead, to refer merely to the process of members becoming retirees. They certainly do not override the clear definition of membership, which excludes retirees despite their ongoing participation in receiving benefits from the TVARS.

members of the TVARS, and it is by this process that the members' interests are represented. The TVA's argument that the notice provisions are designed, not for lobbying purposes, but to allow members to make any changes to their retirement plan, makes far greater sense. Indeed, it justifies limiting notice to members only, rather than all beneficiaries, since only members are in the position to change their retirement plan options.

The plaintiffs also argue that, even though the Amendments were said to go into effect as of January 1, 2010, in fact the provision of the Amendments suspending the TVA's contributions went into effect earlier, because the Amendments interrupted the normal process by which the TVARS would request and receive funding from the TVA for 2010. According to the plaintiffs, as of August 17, 2009, the TVARS had already requested a certain minimum amount of funding from the TVA for 2010, and the TVA's response to this request was due on October 1, 2009 (it is not clear from the record whether this requested contribution represented any definitive calculation of COLAs for 2010). This argument is without merit. October 1st was more than thirty days past August 17th and, therefore, past the close of the veto period, so there is no basis to find that, even if a portion of the Amendments did become effective on October 1, 2009, there was a violation of the notice provision. Moreover, the court does not find that these facts render October 1, 2009 the effective date for any portion of the Amendments. The Amendments suspended the TVA's contributions for 2010, but they were silent as to the process to determine the contribution amount in the event the Amendments were vetoed. There is no reason why the Amendments would have required the Board and the TVA to stop their negotiations over 2010 funding if the TVA was considering a veto, nor stopped them from restarting those conversations after a veto took place, if necessary.

Finally, the plaintiffs also argue that that the form of notice was improper and violated the Rules. The plaintiffs offer no evidence, however, that the newsletter announcement and bulletin board postings were insufficient under the Rules. Nor do they argue that there were any members who did not, in fact, have access to this form of notice. There is nothing in the language of the Rules that mandates notice be given in any particular form and, therefore, no basis to find that the form of notice that was given violated the Rules.

For these reasons, the court finds that the plaintiffs are unable to establish that the Rules have been violated with respect to the notice provision of Rule 13 and there is no material dispute of fact that would prevent the court from resolving this issue at the summary judgment stage. As a result, the court will grant summary judgment in favor of the defendants on the plaintiffs' claim that there has been a procedural violation of the Rules, and this claim will be dismissed with prejudice.

### 2. The Future COLAs Were Not Accrued

The Sixth Circuit has already held that future COLAS are not vested under the Rules, citing the plain language of Rule 6.I, which states, with respect to COLAs, that:

> The rate of increase shall be the percent increase in the CPI over the preceding [year]; provided, however, that the increase for any year shall not exceed five percent, (5%) except that the board may, in its discretion and with the approval of the TVA, apply for any year a maximum different from that specified above.

The Sixth Circuit has interpreted this language to mean that the Board may increase or decrease the cap on the COLA rate for any given year and, therefore, the rate is not set and cannot be vested.[5] (Docket No. 238, pp.17-20.) The Sixth Circuit also relied on other sections of the Rules

---

[5] The plain language of Rule 6.I might most easily be read to mean that the Board may raise the cap, but not lower it, especially in light of the fact that this entire section of the Rules is discussing an "increase" to member benefits, and Rule 6.I opens with the instruction that "the Board *shall increase*" the benefit payments whenever there has been an increase of a certain

where the language clearly distinguishes COLAs from vested (or nonforfeitable) benefits. (*Id.*)

In order, then, for the plaintiffs to establish that the reduction of future COLAS violated Rule 13, the court would need to find that the COLAS for the years 2010 through 2013 were both accrued and covered by accumulated reserves held for that purpose at the time the Amendments were enacted.

The Rules are silent as to the exact definition of accrual, particularly with respect to COLAS. The court finds, however, that the best reading of accrual as used in Rule 13 is that a benefit has been accrued once its amount has been clearly determined. For example, benefits based on a member's service are accrued by the Rules themselves because the Rules provide an exact calculation for the benefit rates. These benefits then become vested as each member provides the requisite years of service. Just as the Sixth Circuit explained that future COLAs are not vested because their amount is unknown under the pre-Amendments formula contained in the Rules, they are also not accrued for this same reason. The formula in the Rules cannot be implemented to determine the COLA increase for a given year until the CPI of the prior year is known and, even then, the Board has the discretion to raise or lower the cap. The court finds that COLAs accrue only once the rate for a year has been conclusively determined, and the COLAs then become protected under Rule 13 only once the TVA has given contributions to the TVARS specifically to cover the costs of those COLAs.

To support their position that future COLAs are accrued, the plaintiffs cite Rule 9.B.6, which refers to the TVA's ability to use funds from the Excess COLA Account to cover its

---

amount in the CPI. Nevertheless, the Sixth Circuit cites other sections of the Rules which support its determination that the COLAs are not vested benefits. Moreover, it is clear that the amount of future COLAs cannot be determined with specificity from the Rules alone (even the future fluctuations of the CPI are unknown). Therefore, future COLAs cannot be said to be vested in the sense that they were relied upon by members in exchange for service. Nor, for the reasons discussed herein, can they be found to be accrued.

contributions up to an amount determined by the "accrued liability for current and future" COLA benefits.[6] The best way to interpret this provision, however, is that it uses the term "accrued liability" to refer only to those future COLAs for which the rate has already been set for the year (or the COLAs for the following year), not all COLAs for the indefinite future. Indeed, under Rule 9.B.5, the TVA makes contributions to the TVARS on a yearly basis and Rule 9.B.6, in turn, addresses the amount of this *yearly* contribution. Finally, the plaintiffs cite *Thornton v. Graphic Commc'ns Conferences of Int'l Bhd. of Teamsters Supplemental Ret. & Disability Fund*, 566 F.3d 597, 604-07 (6th Cir. 2009), for the proposition that, under ERISA, future COLAs are considered accrued and, therefore, are protected by the anti-cutback provisions. *Thornton*, however, addresses the accrual of COLA benefits that have already been awarded in a definitive amount.

*Frazier v. City of Chattanooga, Tennessee*, 841 F.3d 433 (6th Cir. 2017) is a case that discusses the accrual of benefits in a way that sheds more light on the claims at issue here. In *Frazier*, accrual is clarified to refer only to benefits that have already been awarded, such as COLAs that have been determined for a year. The claims in this action involve benefit increases that were not yet issued and were subject to change based on unknown fluctuations in the CPI

---

[6] The plaintiffs also cite the 2007 TVARS Valuation Report (Docket No. 213-6), which, the plaintiffs claim, refers to future COLAs in its calculation of accrued benefits. It is clear, however, that this report is an actuarial estimate for accounting purposes. Even if the Amendments had not taken place, there would have been no way to determine the actual amount of future COLA benefits without knowing the future fluctuations to the CPI. Referring to these benefits as accrued liabilities for accounting purposes is not the same as finding that they are accrued benefits under the Rules.

and the discretion of the Board in raising and lowering the cap. Accordingly, at the time the Amendments were passed, the COLAs for years 2010-2013 were not yet accrued.[7]

Because future COLAs were not yet accrued, the court need not reach the question of whether the COLAs for 2010-2013 were covered by accumulated reserves held therefor. For the reasons discussed in more detail in the following section on the Excess COLA Account, however, the court rejects the plaintiff's argument that the Excess COLA Account represents reserves specifically held to pay COLAs in any particular amount. While it is not clear from the record whether the TVARS had reached any definitive calculation of the COLAs for 2010 in their initial request for funding that was made prior to the passing of the Amendments, it is clear from the record that, in light of the Amendments, the TVA did not make a contribution for 2010 that matched that request. Therefore, regardless of the amount of funding generally available to the TVARS (or specifically available in the Excess COLA Account), it cannot be said that reserves were specifically set aside for the purpose of any set COLA for 2010 as per the pre-Amendments formula.

For these reasons, the future COLAs were not protected by Rule 13, and the provisions in the Amendments that reduced the COLAs for 2010-2013 did not violate the Rules. There is no dispute of material fact that would allow the plaintiffs' claim based on the reduction of COLAs to survive summary judgment and, thus, the defendants' motion will be granted as to this claim and the claim will be dismissed with prejudice.

---

[7] The plaintiffs argue that, if accrual is postponed until a benefit is actually *paid,* then even basic pension benefits would be vulnerable to reduction, and the anti-cutback provision would be meaningless. The court does not, however, find that the Rules require benefits to be *paid* in order to be accrued, only that the amount be clearly determined.

### 3. *The Future Interest Rate on The Annuity Account Was Not Accrued*

Based on the same definition of accrual, the interest rate on the Annuity Account for future years was also not accrued as of the time the Amendments were enacted. The plaintiffs cite Rule 19.A.1 for setting the interest rate on the Annuity Account. Significantly, however, this Rule expressly states that the members' contributions to the Annuity Account "shall earn a fixed rate of return as set by the Board and set forth in the actuarial assumptions in the Appendix to [the Rules]." The Actuarial Assumptions section of the Appendix to the Rules is then prefaced with the following language: "The Board may change these assumptions, tables, and rates from time to time." Moreover, the pre-Amendments version of the Actual Assumptions did not indicate a set rate of interest. Rather, Section 17.a of the Actuarial Assumptions stated that the rate was to be determined by the rate of return for the retirement system. The Amendments added to this language that, after January 1, 2010, the rate would be the lesser of this former calculation or 6 percent.[8]

There is, therefore, no basis to find that, at the time the Amendments were passed, there was an accrued benefit in any particular interest rate for future years. The plaintiffs argue that the Board's discretion to change future rates of interest on the Annuity Account, as provided for in the preface to the Actuarial Assumptions section of the Appendix, applied only with respect to interest earned on *future* contributions, not the interest rate to be earned on contributions already made by members into the Annuity Account. There is, however, no support for this proposition anywhere in the language of the Rules or the Appendix. To the contrary, the Appendix is specifically referenced in the Rules to outline the future interest rate that will be awarded on all

---

[8] The parties appear to agree that, at least at the point in time that the Amendments went into effect, the interest rate under the pre-Amendments formula would have been 7.5%.

contributions in the Annuity Account.[9]  Finally, the plaintiffs argue that Rule 11.B.1 protects the

interest rate on the Annuity Account, because it states that "[r]ights to benefits based on a

member's own contributions shall be nonforfeitable at all times."  This language, however, is

best read to refer to benefits based on the *principal* amount of the contributions, not the interest

rates associated with those contributions.  Finally, there is no evidence in the record that, even if

the rate of interest on the Annuity Account were accrued, benefits based on such a rate were

covered by reserves held therefor.

　　For these reasons, the court finds that the Amendments lowering the interest rate on the

Annuity Account do not violate the provision in the Rules against reducing certain accrued

benefits.  There is no dispute of material fact as to the plaintiffs' claim arising from the reduced

interest rate on the Annuity Account and, therefore, summary judgment in favor of the

defendants will be granted as to this claim and the claim will be dismissed with prejudice.

### 4. There is No Violation of the Rules for Debiting of the Excess COLA Account

　　Before turning to the merits of this claim, the court addresses the defendants' argument

that any claim arising from debiting of the Excess COLA Account is moot because, since the

time this action was filed, the Excess COLA Account has been dismantled and absorbed into the

larger Accumulation Account by recent amendment to the Rules.  While the plaintiffs do not

_____

[9] In support of their position, the plaintiffs also mis-characterize the TVA's prior briefing in
support of its pre-appeal Motion for Summary Judgment.  According to the plaintiffs, the TVA
initially represented that the changes to the interest rate on the Annuity Account were applied
only to contributions made to the account after Jan. 1, 2010 (citing Docket No. 128) but that the
TVA then later admitted that was incorrect and that the interest rate change applied to all
contributions to the Annuity Account (citing Docket No. 241, p.1 and Docket No. 254, ¶ 20).
The TVA's earlier briefing did state that the interest rate change "had no effect on individual
balances in the [Annuity Account] as of December 31, 2009."  (Docket No. 128, p. 7.)  Later in
the same brief, however, the TVA clarified that what it meant by that is that the rate change did
not affect *interest already earned* as of that time (*id*. at p. 20), not that it did not affect future
interest to be earned on money already in the account.

dispute this occurrence, and there is evidence in the record to show that the Rules have been so amended, the court finds that this development is irrelevant to the instant dispute. The plaintiffs' claim is based on allegations that the defendants misused the Excess COLA Account during the years 2010-2013, during which time the Excess COLA Account was in existence and was governed by the version of the Rules then in effect.[10]

As noted above, the plaintiffs have conceded their claim that the suspension of contributions from the TVA for years 2010-2013 violates the Rules. And, in fact, there is nothing in the Rules mandating that the TVA must make annual contributions to the TVARS, although the Rules do authorize the TVARS to request funding from the TVA to cover minimum operations.[11] To the contrary, the plaintiffs argue that the four-year suspension itself, as codified in the post-Amendments Rules, supports their claim that the debiting of the Excess COLA Account was an improper violation of the Rules. According to the plaintiffs, because there were no required contributions by the TVA for 2010-2013, there was no right for the Board to debit the Excess Cola Account to offset these contributions. The plaintiffs cite Rule 9.B.5, which provides that the TVA can offset its contributions using funds from the Excess COLA Account up to a certain amount, and Rule 10.D.2, which allows the Excess COLA Account to be debited with any such amount. The plaintiffs overlook, however, that these Rules do not address

---

[10] Even though, as the defendants point out, this action was initially filed in 2010 and some of the debits at issue had not yet taken place, the court interprets this claim in the light most generous to the plaintiffs to include the later debits of the Excess COLA Account that would become necessary upon the four-year suspension of contributions from the TVA. The section of the Rules pertaining to the use of the Excess COLA Account was not altered by the Amendments and remained in effect during the entire period from 2009 to 2013.

[11] In fact, Rule 11.A, which addresses the TVA's obligations, specifically states "nothing contained [in the Rules] shall be construed as obligating TVA in any way to make regular or definite contributions to the Retirement System, or as conferring any rights upon any employee or other person against TVA."

debiting of the Excess COLA Account for other uses by the TVARS, and, indeed, there are no provisions prohibiting the TVARS Board from debiting the Excess COLA Account for reasons other than to offset the TVA's contributions for that year. Rule 9.B.5 simply provides the formula by which the *TVA* may use the Excess COLA Account toward its contributions. Moreover, under Rule 10.D, even the TVA is allowed to debit the Excess COLA Account to fund its contributions to the TVARS for *all* purposes, not just towards its contributions for COLAs.

The plaintiffs place a great deal of emphasis on the fact that the Excess COLA Account has the word "COLA" in its name as support for the proposition that it can only be used for COLAs. This proposition, however, is unsupported by the Rules governing the use of the Excess COLA Account and is directly undermined by Rule 3.1, which gives the TVARS Board broad discretion to allocate funding between accounts and use those accounts to fund benefits. The plaintiffs argue that, if the Excess COLA Account had not been used to fund benefits aside from COLAs, there would have been no need to reduce the COLAs for years 2010-2013. The plaintiffs overlook, however, that the reduction of the COLAs was within the Board's discretion and was made at the same point in time that the TVA made a $1 billion contribution to the TVARS. Finally, the plaintiffs also argue that the Excess COLA Account has only ever been used in the past to cover the costs of COLAs and, as support for this proposition, the plaintiffs cite an exhibit to the TVARS's interrogatory responses (Docket No. 213-1), charting prior debits made to the Excess COLA Account. There is no indication on this exhibit, however, of what these debits were actually used for, nor do the amounts of the debits per year that are listed in the exhibit line up to the yearly costs of COLAs also listed in the exhibit. Ultimately, there is simply

no basis to find that any of the Rules were violated by the debiting of the Excess COLA Account for purposes other than COLA payments.

As a result, the court finds that, given the undisputed facts in the record, the plaintiffs are unable to establish that the defendants have violated the Rules, either procedurally or substantively. There is no dispute of material fact preventing the court from granting summary judgment in favor of the defendants on all claims and, thus, this action must be dismissed with prejudice in its entirety.

## CONCLUSION

For the foregoing reasons, the plaintiffs' Motion to Amend the Complaint and Modify the Scheduling Order (Docket No. 244) will be denied, the TVA's Motion for Judgment on the Administrative Record as to All Remanded Claims (Docket No. 240) will be granted, and the plaintiffs' Motion for Summary Judgment (Docket No. 247) will be denied. Accordingly, this action will be dismissed with prejudice.

An appropriate Order will enter.

ALETA A. TRAUGER
United States District Judge